UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**ALEKSEI SHUSHLIANNIKOV,**<br>**Defendant** | Crim. No. 13-CR-10297-MLW |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States moves the Court to sentence Mr. Shushliannikov to 46 months of imprisonment, 36 months of supervised release thereafter, forfeiture, restitution of $900 to the identified victims of the underlying computer-hacking offenses, and a mandatory special assessment of $300.

## The Crime

From December 13, 2012, through his arrest on February 11, 2013, Mr. Shushliannikov laundered approximately $437,134[1] in proceeds from a computer-hacking extortion scheme. He did so using prepaid debit cards ordered in the identities of various people without their permission. He had the cards mailed to the residences of yet other people around New England, also without their permission. He picked up the cards, kept track of their proceeds, withdrew the proceeds, deposited the cash into bank accounts, and then transferred the balances overseas. Mr. Shushliannikov acted at the direction of a co-conspirator. To the government's knowledge,

---

[1] The United States estimated that the conspiracy actually laundered about $468,630, but Probation's more conservative estimate $437,134 is also reasonable. The United States also calculated that the amount that the conspiracy *intended* to launder could be as high as $2,103,120. But because this estimate would incorporate a number of debatable assumptions, the United States suggested that Probation use a more conservative estimate of between $400,000 and $1,000,000. Probation has used this estimate.

neither Mr. Shushliannikov nor his co-conspirators participated in the underlying computer-hacking extortion scheme

**<u>The Sentencing Guidelines</u>**

The PSR's guideline calculations match the parties' own guideline calculations. After accounting for acceptance of responsibility, they amount to an offense level of 23 and, with a CHC of I, 46 to 57 months of imprisonment.

Related to the question of whether the guidelines were calculated correctly is the question of whether these particular calculations make sense. That is, do they measure factors that should inform a proportional, yet nationally uniform, sentence?

They do. The largest guideline factor in this case, under U.S.S.G. §§ 2S1.1(a)(2), 2B1.1(b)(1)(H), is the conspiracy's intent to launder a large amount of money and its success at doing so. Some might argue that loss-based guidelines are unhelpful and disproportionate. That might be true if the loss were disproportionate to the defendant's criminal culpability — perhaps if the loss were an unintended windfall, a poor proxy for harm to the victims, or out of proportion to the defendant's actions or motivation. For example, if a CEO told his secretary that she would be fired if she did not backdate some documents to fraudulently get him a $10 million employment bonus, sentencing the secretary based on a $10 million loss might be unfair. But that is not the case here. Here, the $400,000 to $1,000,000 estimate of extortion proceeds represents a crime that Mr. Shushliannikov committed repeatedly, frequently, and over a two-month period; a crime in which the proceeds came right from the pockets of the victims' and into the pockets of Mr. Shushliannikov and his co-conspirators; a crime in whose machinations Mr. Shushliannikov was intimately involved; a crime that funded Mr. Shushliannikov's and his co-conspirator's upper-level apartment in a high-rise around the corner from TD Garden. Increasing

the offense level to account for the large amount of proceeds as a component of culpability makes sense here.

Another important guideline factor here is the number of victims, under U.S.S.G. § 2B1.1(b)(B). Why isn't the number of victims a duplicative measure of the same culpability as the amount of loss or extortion proceeds, as measured above? In certain cases, they might be duplicative. But not here. Here an increase for the large number of victims recognizes that Mr. Shushliannikov has inconvenienced a large number of people in terms not measurable by money: their time and concern has been wasted in learning about their potential victimhood, in investigating whether they suffered losses worth claiming restitution, and in monitoring this case's progress. Increasing the offense level to account for the large number of victims as an additional component of for culpability makes sense here.

A final important guideline factor here, under U.S.S.G. § 2B1.1(b)(11)(C)(ii), is Mr. Shushliannikov's possession of five or more means of identification (debit cards) that had been opened using the names, dates of birth, and Social Security numbers of unconsenting identity victims. Why isn't this duplicative of the increase for the number of victims discussed above? Because this guideline factor measures something more subtle: by using other people's identities, Mr. Shushliannikov and his co-conspirator framed them. That ruse may have been easy to see through, given that Mr. Shushliannikov was caught red-handed. But if he had not, each identity victim would have been a potential suspect. Casting suspicion on others is more culpable than performing the same crime without doing so. Increasing the offense level to account for the use of others' identities as an additional component of culpability makes sense here.

For these reasons, the range computed by the guidelines is a good benchmark for Mr. Shushliannikov's sentence.

**18 U.S.C. § 3553(a)**

In addition to considering the sentencing guidelines, the Court must also consider the penological factors set forth in 18 U.S.C. § 3553(a). They too compel a significant term of imprisonment.

*The Nature and Circumstances of the Offense, Including Its Seriousness – 18 U.S.C. § 3553(a)(1), (a)(2)(A)*

This was a serious offense by any measure. As discussed above, Mr. Shushliannikov laundered $400,000 to $1,000,000 in extortion proceeds repeatedly, frequently, and over a two-month period; the money came from the pockets of individuals and went into the pockets of Mr. Shushliannikov and his co-conspirators; and a large number of people were inconvenienced, essentially framed.

*The History and Circumstances of the Defendant – 18 U.S.C. § 3553(a)(1)*

Mr. Shushliannikov has no personal justifications or excuses for committing this crime. He did not have a difficult childhood: rather, he reports having a "great childhood, spending a lot of time outside and enjoying summers at his maternal grandmother's countryside home." PSR ¶ 56. He did not suffer from addiction or mental health problems. PSR ¶¶ 62-64. He did not lack an education: in fact, he has the equivalent of an associate's degree and has been working toward a bachelor's degree. PSR ¶ 65. He did not even suffer from unemployment: rather, he was employed before and during the offense. PSR ¶¶ 68-73.

*The Need to Avoid Unwarranted Sentence Disparities – 18 U.S.C. § 3553(a)(6)*

Although Mr. Shushliannikov's co-conspirators have not been caught, the Court might want to consider four comparable cases: *United States v. Zsolt Lendvai*, Crim. No. 12-CR-10112-GAO (D. Mass.); *United States v. Eniko Somodi*, Crim. No. 12-CR-10147-NMG (D.

Mass.); *United States v. Tamas Ringhoffer*, Crim. No. 12-CR-10113-WGY (D. Mass.); and *United States v. Catalin Buzea*, Crim. No. 12-CR-10324-GAO (D. Mass.).[2] Like Mr. Shushliannikov, these defendants came from Eastern Europe, participated in a money-laundering conspiracy at the direction of another who got away, but did not participate in the underlying crime that generated the proceeds. Unlike Mr. Shushliannikov, the proceeds that they laundered came not from computer extortion, but rather from an advance-fee scheme to sell vehicles fraudulently over the Internet.[3] As a result, they did not arrange for mail drops of prepaid debit cards using the identities of other people. Instead, they helped establish fraudulent companies and obtain fraudulent bank accounts and commercial mailboxes at UPS stores and the like, all using fraudulent foreign passports. Some other details:

| **Defendant** | **Duration** | **Amount Laundered** | **Coercion claimed?** | **Sentence** |
|---|---|---|---|---|
| Shushliannikov | ~8.5 weeks | $400,000 - $1,000,000 | No | TBD |
| Lendvai | ~6.5 weeks | ~$1,100,000 | Yes - U.S. agreed | 24 months |
| Somodi | ~6.5 weeks | ~$1,100,000 | Yes - U.S. agreed | 24 months |
| Ringhoffer | ~2 weeks | ~$78,000 | Yes - U.S. agreed | ~10 months (time served) |
| Buzea | ~17.5 weeks | $70,000 - $120,000 (plea agreement)<br><br>$120,000 - $200,000 (PSR) | Yes – but U.S. could not verify | 12 months |

Mr. Shushliannikov's crimes were more serious. The major differences are that (a) the other defendants all claimed coercion, on which grounds the United States moved for a

---

[2] This courthouse has doubtless seen other similar cases. These are merely the comparable cases handled by this Assistant United States Attorney.

[3] Lendvai, Somodi, and Ringhoffer were co-conspirators; Buzea was part of a completely different conspiracy with a similar *modus operandi*.

downward departure or variance for three of them; (b) they did not use identity victims to launder their funds; and (c) they made much less than did Mr. Shushliannikov.

Because Mr. Shushliannikov's crimes were more serious, he deserves a more serious sentence.

**<u>Restitution</u>**

The computer hacking victims are entitled to restitution for their losses, even though Mr. Shushliannikov and his co-conspirators did not participate in the computer hacking. In *United States v. Neal*, 36 F.3d 1190 (1st Cir. 1994), the First Circuit considered whether a district court properly entered an order of restitution against a defendant who did not participate in a string of bank robberies, but acted as an accessory-after-the-fact by helping the robbers evade law enforcement officials and as a money-launderer by purchasing a getaway vehicle with the robbery proceeds. *See id.* at 1199-1200. The First Circuit remanded, directing the district court to determine whether the defendant was responsible for the full amount of damages, *id.* at 1201, noting that one basis for doing so could be "[i]f on remand, for example, evidence is presented indicating that [the defendant] played a significant role in helping the other defendants escape and that but for his actions, there was a substantial likelihood that the full proceeds would have been recovered," *id.* at 1201 n.10. In *United States v. Quackenbush*, 9 Fed. App'x 264 (4th Cir. 2001) (per curiam), the Fourth Circuit held that an accessory-after-the-fact to a bank robbery who assisted the robbers by driving them after the robbery to various locations, harboring them, and helping them travel and spend the robbery proceeds could be held jointly and severally liable for restitution of the robbery proceeds. Following *Neal,* the Fourth Circuit held that "there is no per se rule against imposing restitution on persons based upon their convictions for being accessories-after-the-fact." *Quackenbush*, 9 Fed. App'x at 268 (citing *Neal*, 36 F.3d at 1201

n.10). Even though "Quackenbush was not the actual 'getaway driver' from the robbery," *id.* at 269, and "the bank robbery was completed by the time Quackenbush became involved, we have no difficulty concluding that the district court could have found that Quackenbush's conduct, for which he was convicted, impaired both the police's effort to stop the bank robbers and the bank's efforts to recover the stolen money," *id.* On those grounds, the Fourth Circuit held that "Quackenbush could be held jointly and severally liable for the full amount of the bank's unrecovered losses notwithstanding his role as an accessory-after-the-fact." *Id.*

A similar analysis applies here. Although the computer hacking was likely complete by the time that Mr. Shushliannikov and his co-conspirators became involved, there is evidence that their conduct impaired the authorities' ability to recover the extorted money. Everything about the money-laundering was designed for these purposes: to disguise from whom the money came, where it was going, and where it ended up, and also to prevent its recovery. The Court should therefore impose restitution of $900.

Why so little? Because the United States has identified only three of the computer-hacking victims with sufficient precision. There are several reasons for this. First, although many crimes are investigated by talking to the victims first and identifying the criminal second, this crime was uncovered by identifying the criminal first. Consequently, this investigation lacks many of the victim reports that might otherwise have been obtained. Second, the victims were unlikely to report the extortion to law enforcement if they were told that their computers were being frozen by the government for illegal computer usage (likely surfing pornographic or similarly embarrassing websites). In fact, even though investigators learned the names of eight computer-hacking victims, investigators obtained information sufficient to identify only three of them despite various efforts to contact the others. Third, the whole point of the money-

laundering scheme was to muddy links between the money-launderers and the computer hackers. To investigate further the hundreds of victims, most of whom likely would not have wanted to cooperate with the investigation, would have been a massive and minimally fruitful task.

**Conclusion**

For the reasons set forth above, this Court should sentence Mr. Shushliannikov to 46 months of imprisonment, 36 months of supervised release thereafter, forfeiture, restitution of $900 to the identified victims of the underlying computer-hacking offenses, and a mandatory special assessment of $300.

Respectfully submitted,

CARMEN M. ORTIZ
United States Attorney

Date: February 4, 2015

*/s/ Scott L. Garland*
Scott L. Garland
Assistant United States Attorney
BBO #650358
1 Courthouse Way, Suite 9200
Boston, MA 02210
scott.garland@usdoj.gov
517-748-3290

## **CERTIFICATE OF SERVICE**

      I certify that this document is being filed electronically and therefore will be sent to the registered participants identified in the Notice of Electronic Filing.

Date: February 4, 2015                       */s/ Scott L. Garland*
                                                            Scott L. Garland
                                                            Assistant United States Attorney